BURLINGTON & M. R. CO. v. SAMUEL WALLACE.

[FILED DECEMBER 17, 1889.]

1. **Railroads:** DEFECTIVE APPLIANCES: QUESTION OF FACT. In an action for damages resulting from personal injury received by reason of the reverse lever of a locomotive becoming detached and changing the motion of the engine, and by which it was sent violently against a car upon which the plaintiff in the action was standing, a question was presented on the trial as to whether the lever became detached by reason of a defective construction of the "reverse lever," "quadrant," and "dog," or by the want of care of the engineer. It was *held*, upon the evi-

dence submitted, that the question was a proper one for the jury, there being some evidence of a defect in the operation of the machinery.

2. ———: ———: EVIDENCE. A witness, who was a switchman, was called by the plaintiff in the suit for the purpose of showing a defect in the appliances used for the purpose of reversing the motion of the engine, and stated that to his knowledge the reverse lever of that engine had become detached on two other occasions, and by which the control of the engine was temporarily lost by the engineer. Upon cross-examination he stated that he could not see the lever "fly back," but that upon each occasion he was with the engine, saw its movements by which it refused to change its course, but accelerated its speed at a time when not required, and demanded of the engineer the cause of the failure to follow his directions, when the engineer said, "it flies back." The trial court refused to strike out the evidence of the witness upon motion of defendant. *Held*, No error and no prejudice.

3. ———: ———: WITNESS REFRESHING MEMORY. The refusal by the trial court to let a witness refresh his memory and testify from certain entries in a book, he being unable to testify from memory, was not erroneous, or if erroneous, was not a prejudicial error when the entries from which it was sought to have the witness refresh his memory had already been read to the jury and were before them as evidence.

4. The Instructions upon the question of negligence examined, and *held*, properly given.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*Green & Marple*, for plaintiff in error:

The company is not required to warrant the safety of the servant or the perfection of the appliances, but only to use reasonable care to prevent accident. (*Smoot v. R. Co.*, 67 Ala., 13; *Col., etc., R. Co. v. Troesch*, 68 Ill., 545; *R. Co. v. Arnold*, 31 Ind., 174; *Cayzer v. Taylor*, 10 Gray [Mass.], 274; *Gilman v. R. Co.*, 10 Allen [Mass.], 233; *Coombs v. New Bedford Cordage Co.*, 102 Mass., 572; *Gibson v. Pac. R. Co.*, 46 Mo., 163.) It is not liable unless it had knowledge of the defect or was otherwise guilty of negli-

gence. (*Smith v. R. Co.*, 42 Wis., 520; *Steffen v. R. Co.*, 46 Id., 265; *Morrison v. Construction Co.*, 44 Id., 405; *East St. Louis, etc., Co. v. Hightower*, 92 Ill., 139; *Indianapolis, B. & W. R. Co v. Toy*, 91 Id., 474; *Same v. Flanigan*, 77 Id., 365; *Mad River, etc., Co. v. Barker*, 5 Ohio St., 541; *Warner v. Erie R. Co.*, 39 N. Y., 468.)

*Gannon, Breck & Shea, contra:*

The engine was defective and *any* inspection would have revealed the fact; hence the company is liable. (*R. Co. v. Brooks*, 83 Ky., 129; *L., etc., R. Co. v. Cavens*, 9 Bush [Ky.], 559; 4 Am. State Reports, 138; *Tierney v. Minneapolis & St. L. R. Co.*, 33 Minn., 315; *Moynihan v. Hills Co.*, 146 Mass., 586; *Gutridge v. M. P. R. Co.*, 94 Mo., 468; *Fuller v. Jewett*, 80 N. Y., 46, 53; *Murphy v. Boston & A. R. Co.*, 88 Id., 146; *Anderson v. Bennett*, 19 Pac. Rep. [Or.], 769; *Darracott v. Chesapeake & O. R. Co.*, 83 Va., 288.

Reese, Ch. J. .

This action was instituted in the district court for the purpose of recovering damages alleged to have been sustained by defendant in error by reason of personal injuries received while in the service of plaintiff in error in the capacity of switchman in its track yard. The injuries were alleged in the petition to have resulted from a defective condition of the engine employed in switching in said yard, at the time, and by reason of such defects the engineer was unable to control the movements of the engine. That by reason of the negligence of plaintiff in error in the use of said engine, the reverse lever, which controls the direction of its movement, was, by reason of the defect referred to, thrown back, thereby changing the motion of the engine and sending it back against a car, upon which defendant in error was standing for the purpose of managing the brakes, with such force as to throw him off the car, causing

him to fall under the wheels of the engine, and by which, without fault on his part, he was injured. Plaintiff in error by its answer denied that defendant in error was in the exercise of care at the time of the accident, denied negligence on its part, or that the engine was defective, or out of repair, and alleged contributory negligence on the part of defendant in error. A jury trial was had which resulted in a judgment in favor of defendant in error, and for the purpose of a review the case is brought to this court by plaintiff in error — who was defendant in the district court — by proceedings in error.

The motion for a new trial was based on the following grounds:

"First — The verdict is not sustained by sufficient evidence.

"Second — The verdict is contrary to law.

"Third — Errors of law occurring at the trial excepted to by the defendant.

"Fourth — The court erred in refusing to give paragraphs numbers three, four, five, six, ten, and eleven of the instructions asked by the defendant.

"Fifth — The court erred in giving paragraphs one, two, three, four, five, and six of the instructions given by the court."

Following the course adopted by the plaintiff in error in the brief presented by its counsel, it is contended that there was no evidence submitted to the jury showing that at the time of the accident there was any defect in the engine which contributed to the injury.

It appears from the evidence, and is undisputed, that the crew, of which defendant in error was a member, with the engine in question was switching in the yard of plaintiff in error at Omaha; that it was necessary to remove a coal car from where it stood onto another track, in order that it might be attached to a train, and that said removal was to be made by "kicking" the car to its proper place.

There was evidence tending to prove that defendant in error in the proper discharge of his duties went upon said car and took his place at the brakes for the purpose of controlling its movements; that the engineer in charge of the engine in approaching the car upon which defendant in error stood came to within a short distance from it, when he reversed the motion of the engine, by the use of the reverse lever, in order to cause it to "slow up" as it approached the car; that within a short time after reversing the motion the dog of the reverse lever became loosened from the quadrant by which it was held in place, and the lever flew back, thereby adding greatly to the momentum of the engine and sending it against the car upon which defendant in error was standing. We think there is no doubt but that the accident was caused by the lever flying back, thus taking the engine from under the control of the engineer, and sending it against the car referred to; and the question here presented is whether there was any such proof of the defect in the quadrant, dog, or lever as to cause the injury and which plaintiff in error might have guarded against by furnishing the engine with appliances which would have prevented the accident. The turning point in this part of the case seems to be upon the inquiry, whether the flying back of the lever should be charged to the carelessness of the engineer in failing to properly adjust the dog in the slot, or notch, as it was termed by some of the witnesses, of the quadrant and thus permitting it to escape from him, or whether the failure of the lever to remain stationary was caused by a defect in some part of the machinery.

It appears that the engine was manufactured by plaintiff in error at its shops, or at least had been ."overhauled" in such shops upon several occasions, and that plaintiff would thereby be charged with notice of any defect which actually existed. The evidence of all the witnesses upon this part of the case was to the effect, substantially, that if

the machinery was properly made and adjusted, and the dog was properly placed in the slot by the engineer, it would have been practically impossible for it to escape, in the absence of some other contributing cause, and the lever would have been held firmly in the position in which it was placed by the engineer. But had the machinery been ever so carefully constructed, had the engineer released his hold without seeing that the dog was properly placed in the slot, the natural consequence would be for the lever to fly back. The engineer testified positively and directly that in reversing the engine he placed the lever in its proper position and that the dog entered the upper notch in the quadrant; that he then gave his attention toward the car upon which defendant in error was standing, for the purpose of controlling his engine as it approached that car; that after it had run perhaps the length of a car or less in the direction of the car referred to, the dog became released and the lever flew back, thus placing the engine beyond his control and sending it with force against the car upon which defendant was standing. He also testified that upon two other occasions, prior to the one at which the accident occurred, upon reversing the motion of the engine and setting the lever, as he did at the time of the accident, the lever became released and flew back as it did upon the occasion in question. In the latter statement he was supported by other witnesses.

It was made to appear, quite clearly, that there was no sudden movement, concussion, or jar of the engine which could have thrown the lever, had the appliances for holding it been perfect. There was considerable of evidence submitted to the jury, tending to show that in a great number of engines the reverse lever would at times fly back, as did the one at the time of the accident; but practically all the witnesses agreed that if the appliances were well constructed, and the lever was properly locked by the dog, it could not fly back, unless produced by some jar, concussion, or other sudden movement of the engine.

It was, also, as clearly shown that if, by the fault of the engineer, the dog was not properly placed in the quadrant at the time that he released the lever, it would fly back immediately and would not remain in position so long as it seems to have done in this case, and then become released. Within one or two days after the accident the engine was taken to the shops and to some extent overhauled, and with a view of ascertaining whether the accident was caused by any defects in the reverse lever or its appliances, something of an examination of the lever, dog, and quadrant was made. This examination, however, was only by an inspection of the part. There was no practical test with the engine in motion. In view of all this evidence we think the question was properly left to the jury as to whether the lever became detached by reason of the carelessness or negligence of the engineer, or by some defect in its construction or operation. The jury having found in favor of the latter proposition, we cannot molest the verdict on that ground.

In view of this conclusion we do not think the contention of plaintiff in error, that the accident was caused through the negligence of a fellow servant, becomes a material inquiry in this case, as we must be content with the conclusion of the jury—that the accident occurred through no fault of the engineer.

One William Martin, a switchman, was called by defendant in error, and upon examination he was requested to state whether or not he knew anything about the engine before the day of the accident, and he answered that previous to the accident he remembered of two occasions upon which, after the engineer had reversed the motion, the lever flew back and did not hold in the quadrant. Upon cross-examination it appeared that he did not actually observe the action of the lever, that the engine became unmanageable and from his position (upon the foot board perhaps) called to the engineer to know what the difficulty was and why he did not control his engine; when the engineer in-

formed him that the difficulty was caused by the lever flying back. It was shown that while, in the act of switching, the engineer was under the direction of the switchman so far as the movements of the car were concerned, and at the time in question, while the movement of the engine was noticeable by the switchman, equally as well as by the engineer, and upon the demand for an explanation of the action, the reason was given as stated. The whole matter, with the bare exception of the observance of the lever flying back, was under the immediate observation of both the witness and the engineer. We cannot see that the court erred in permitting the testimony of the witness to stand, even after the cross-examination, in which the facts were brought out as herein stated. Again, no prejudice could result to plaintiff in error by reason of the evidence, for it had been fully stated before by the engineer, and was wholly uncontradicted by any other witness.

Mr. Grensel was called as a witness for plaintiff in error for the purpose, we presume, of proving that of the repairs made upon the engine subsequent to the accident the quadrant and reverse lever formed no part. This was testified to not only by the witness named, but by others who had knowledge of the fact. The witness was interrogated as to what a certain book contained, and testified that it contained a record of engine No. 2 (the one in question), on page 2 of the book; that the entries were made under his direction, and that he knew at the time that they were correct; that the record was kept in the usual and ordinary course of business. Counsel then offered the record in evidence, which upon objection was excluded. As the record offered is not set out in the bill of exceptions, we cannot say that its rejection was erroneous. It was then sought to have the witness refresh his memory by reference to the book and thus testify, but upon further examination on the part of counsel for defendant in error he testified that he did not make the entries sought to be used, was not present when

it was done, and that he compared it with his own book, which was not at hand at the time of trial.   The entries in his own book were made by him, but of what others had done.   Upon objection the court refused to allow the witness to refresh his memory by testifying from the book as to what repairs were made on the engine in the year 1887. This ruling is now assigned as error.

The question before the jury was as to the condition of the reverse lever and quadrant at the time of the accident. There was no contention as to any other portion of the engine, and hence it is apparent that no inquiry upon the other matters suggested could give any light upon the question then before the court.   As we have said, the fact that the quadrant and lever had not been repaired had been fully shown.   In addition to this it appears that the witness Tarrance had previously read to the jury as part of his testimony the list of repairs made upon the engine from the entries referred to in this book.   The whole matter was already before the jury so far as the repairs made subsequent to the accident were concerned.   It was wholly immaterial as to what had been made prior thereto.   Admitting the materialty and competency of the offered testimony it is apparent that the court did not err in its rulings excluding it.

Of the instructions given to the jury by the court we here copy those numbered three and four:

"3. If you believe from the evidence that the engine which has been referred to in the testimony as engine No. 2 was at the time of the accident to plaintiff, December 14, 1887, out of repair so that its movements could not be controlled by the engineer, and that the person or persons employed by the defendant to order such engine into the shop for repairs or to direct such repairs to be made, in view of the condition of such engine, or might by the exercise of reasonable care and judgment have ascertained it, and that the injuries resulted to the plaintiff by reason of such want of repair or defective condition of the engine and without

fault or negligence on the part of the plaintiff, then you will be justified in finding for the plaintiff.

"4. If on the other hand you find from the evidence that the plaintiff received his injuries through the carelessness of the engineer, and not from the defective condition of the engine, then the defendant is not liable for the damages resulting from such injury to the plaintiff, but the failure of the engineer to report the defective condition of the engine to the person having charge of the repairs or to such other person as under the rules of the company it was his duty to make reports to, is not such negligence as would relieve the defendant from liability for such injury."

It is insisted that in giving this fourth instruction the court erred. The criticism is that by it the court told the jury, in effect, that it was incumbent upon plaintiff in error to prove that the injuries resulted through the carelessness of the engineer, while in law the burden was upon defendant in error to establish his case by proof. We are unable to see any bias in the instruction complained of. The question of the liability of plaintiff in error or the absence thereof, for defects in the machinery, was fully and fairly presented by the third instruction, and by the fourth the jury were told that if they found that the accident was caused by the carelessness of the engineer and not by the defects claimed to have existed, defendant in error could not recover. This was as favorable to plaintiff in error as the law of the case would justify.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.